UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | (converted from Chapter 13) |
| JOHN F. WALSH, | ) | |
| | ) | Case No. 08 B 06424 |
| Debtor. | ) | |
| | ) | Hon. Jacqueline P. Cox |

## AMENDED MEMORANDUM OPINION

This matter is before the Court on Freeborn & Peters LLP's ("Freeborn") Motion For Award of Compensation and Reimbursement of Expenses and Allowance of Administrative Expense ("Fee Application") for post-petition, pre-conversion services. The Chapter 7 Trustee, Catherine L. Steege, Esq. ("Trustee"), and Sixty Thirty Condominium Association ("Condo Association") filed separate objections to Freeborn's Fee Application.

On May 12, 2015, the Court conducted a hearing concerning the Fee Application. It thereafter allowed counsel to file supplemental briefing, and the matter was taken under advisement. The Court has considered the submissions of the parties, the arguments of counsel, as well as the applicable law, and for the reasons set forth below, Freeborn's Fee Application is denied, Freeborn's administrative claim is disallowed, and both objections are sustained.

### I.    Jurisdiction

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C § 1334(a) and the District Court's Internal Operating Procedure 15(a). This is a core proceeding as to which this Court may enter a final order pursuant to 28 U.S.C. § 157(b)(2)(A) – matters concerning the administration of the estate and § 157(b)(2)(B) – allowance or disallowance of claims against the estate.

## II.    Facts and Background

### A.    The Underlying Litigation

The sole asset of the estate is a $339,010.28 judgment (the "Judgment") entered in favor of John F. Walsh (the "Debtor" or "Walsh") against Wright Development Group, LLC ("Wright"). In 2007, Walsh was the president of the Condo Association. On October 4, 2007, Wright sued Walsh and other parties for defamation in the Circuit Court of Cook County, Illinois (the "Litigation").[1] Wright's Complaint sought damages against Walsh and others for defamation based on statements made by Walsh during his tenure as president of the Condo Association at a meeting in July 2007 attended by a Chicago alderman's aides regarding problems with the construction of the condominium building at 6030 N. Sheridan, which statements were printed in a local newspaper.

Walsh retained Freeborn to perform legal services on his behalf in the Litigation. At that time, Freeborn represented the Condo Association in at least three lawsuits pending between the Condo Association and Wright.[2] The Condo Association states that it indemnified Walsh for liability and attorney's fees in connection with the Litigation, and all invoices were sent to and paid by the Condo Association.[3] Walsh did not pay (nor was he required to pay) any legal fees for the Litigation.

On April 15, 2008, in the defamation case, Walsh filed a Motion to Dismiss the Complaint (the "ICPA Dismissal Motion") under the Illinois' Citizen Participation Act, 735 ILCS 110/1, *et seq.* (the "ICPA") on the ground that the Complaint was a Strategic Lawsuit Against Public Participation (a "*SLAPP*") and asked for attorney's fees under the anti-SLAPP statute. The trial court denied Walsh's ICPA Dismissal Motion. Walsh also pursued a motion to

---

[1] *Wright Development Groupt, LLC v. John Walsh, et al.*, Case No. 07 L 10487.

[2] The Condo Association has filed a lawsuit against Freeborn in the Circuit Court of Cook County, Case No. 2014 L 10151, for legal malpractice based on alleged conflicts of interests in this and other matters in which Freeborn represented both Walsh and the Condo Association.

[3] However, the total billings to the Condo Association from Freeborn was $266,762.75, of which the Condo Association states it paid over $183,000.

dismiss Wright's Complaint for failure to state a claim for which relief could be granted, pursuant to 735 ILCS 5/2-615 ("Section 2-615"), which was granted on September 26, 2008.

Although Wright's Complaint was dismissed, Walsh filed an appeal because he was denied statutory immunity from liability and mandatory attorney's fees – redress available only under the ICPA. The Appellate Court dismissed Walsh's appeal on the ground that the issue was moot based upon the dismissal of Wright's Complaint under Section 2-615.

As counsel to Walsh, Freeborn sought review by the Illinois Supreme Court. On October 21, 2010, the Illinois Supreme Court found in Walsh's favor.[4] The Court unanimously found that the Complaint was a SLAPP action and that, as a victim of a SLAPP, Walsh was entitled to immunity under the ICPA. The Court remanded the case "to the circuit court to award Walsh reasonable attorney fees and costs incurred in connection with the [ICPA] motion."[5]

On remand, Freeborn submitted a request for fees and costs incurred in connection with the ICPA Dismissal Motion. The trial court held evidentiary hearings on the attorney's fee petition on September 8 and October 5, 2011. On January 3, 2012, the trial court entered final judgment in favor of Walsh and against Wright in the amount of $339,010.28, finding that all of Walsh's attorney's fees and expenses were reasonable and allowable under the ICPA. The Judgment covers services rendered by Freeborn and Sanchez Daniels & Hoffmann LLP ("Sanchez") both prior to the Petition Date and during the chapter 13 case.[6] On February 15, 2011 and March 12, 2013, pursuant to 770 ILCS 5/1, Freeborn served Notices of Attorney's Lien in connection with the Litigation via certified mail on Wright and its counsel in the amounts of $183,034.47 and $261,807.28 (amended), respectively.

---

[4] *Wright Development Group, LLC v. Walsh, et al.*, 939 N.E.2d 389 (Ill. 2010).

[5] *Id.* at 399.

[6] Apparently, at some point during the Litigation, Attorney Michael Franz left Freeborn and joined the Sanchez law firm, but continued to represent Walsh in the Litigation, along with Freeborn. In footnote 2 of its Fee Application Freeborn states "The Debtor's fees and expenses included those of Freeborn's co-counsel, [Sanchez]." The Sanchez firm has not sought approval from the Bankruptcy Court to represent the Debtor in the Litigation, nor has it filed a fee application in the Debtor's bankruptcy case.

### B.   Walsh's Bankruptcy Case

On March 18, 2008 (the "*Petition Date*"), less than six months after the start of the Litigation and less than one month before filing the ICPA Dismissal Motion, Attorney Donna B. Wallace, on behalf of Walsh, filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois (the "*Bankruptcy Court*"). The Debtor did not schedule Wright as a creditor, nor did he list the claim for attorney's fees against Wright or the pending Litigation in his Statement of Financial Affairs. On that same date, the Debtor filed a proposed chapter 13 plan (the "*Plan*"). On May 12, 2008, the Bankruptcy Court confirmed the Debtor's Plan.

On December 1, 2011, before the Debtor completed the payments required under the confirmed Plan, he filed a notice of voluntary conversion of his chapter 13 bankruptcy case to chapter 7. Notably, the conversion occurred only two to three months after the state trial court held evidentiary hearings on Walsh's fee petition. Neither the Debtor nor Freeborn informed the Trustee about the pending state court litigation or the Illinois Supreme Court decision holding that the Debtor was entitled to recover attorney's fees.

On January 19, 2012, one week after the Judgment was entered in state court, the Trustee held the § 341 meeting of creditors. The Debtor testified that he was not suing anyone at the time he filed bankruptcy and that there was no one he could sue who owed him money. Subsequently, the Trustee filed a no-asset report. The Debtor received a discharge on March 20, 2012; the bankruptcy case was closed on March 23, 2012.

### C.   Wright's Request to Vacate the State Court Judgment and the Reopening of Walsh's Bankruptcy Case

At some point thereafter, Wright discovered that the Debtor had filed for bankruptcy and that he had not disclosed the Litigation. On October 16, 2012, Wright filed an Emergency Petition for Relief from Final Judgment to vacate the Judgment (the "*Motion to Vacate*") on the ground that the Debtor was judicially estopped from enforcing the Judgment because he failed to schedule the civil lawsuit as an asset in his bankruptcy case.[7] Freeborn claims it was not

---

[7] Wright cited *Berge v. Mader*, 957 N.E.2d 968 (Ill. App. 2011) in support of its Petition. There the Appellate Court ruled that a debtor/plaintiff in a personal injury case was precluded by judicial estoppel from

scheduled as a creditor of the Debtor, and that it was not aware of the bankruptcy filing until Wright raised the issue in its Motion to Vacate.

On November 15, 2012, the Debtor, via his counsel, filed a response to the Motion to Vacate and argued that the attorney's fees awarded in the Judgment were not property of the estate. Under 11 U.S.C. § 541, at filing, a debtor's property, including claims against its creditors, becomes property of the bankruptcy estate. The Debtor argued that: (1) the attorney's fee claim belonged to the Condo Association under the doctrine of equitable subrogation; and (2) the claim was subject to a resulting trust in favor of the Condo Association. On January 23, 2013, the state court denied Wright's Motion to Vacate. Wright appealed the trial court's decision on the Motion to Vacate. Still, the Debtor and his attorneys at Freeborn & Peters LLP failed to inform the Trustee of the state court action, and the fact that a dispute over whether the claim was property of the bankruptcy estate was being litigated outside the Bankruptcy Court. After Wright appealed the state trial court's denial of its Motion to Vacate, Wright's counsel notified the Trustee of the Litigation.

On April 22, 2013, the Trustee filed a motion to reopen the Debtor's chapter 7 case to pursue the Judgment. On April 30, 2013, the Bankruptcy Court entered an order reopening the Debtor's chapter 7 case. All attempts by the Trustee to negotiate a consensual resolution of the dispute between the Debtor and Wright failed.

On July 21, 2014, Illinois' First District Appellate Court dismissed both Wright's appeal and Walsh's cross-appeal after determining that, as a result of Walsh's bankruptcy filing, it lacked jurisdiction and found that every trial court order and filing entered in the Litigation after the Petition Date was void, including the notice of appeal. That Court also held that only the Bankruptcy Court has authority to retroactively annul the automatic stay that was in effect at the time the state trial court proceeded after the Debtor's bankruptcy case was filed. The Illinois Appellate Court ruled that the claim against Wright belonged to the Trustee. *Wright Development Group, LLC v. John Walsh*, 2014 IL App (1st) 130646-U (July 21, 2014).

---

pursuing a claim due to her failure to disclose the claim/asset in her bankruptcy petition.

On November 20, 2014, Freeborn filed its Fee Application in this court seeking compensation and reimbursement of expenses in the total amount of $196,691.65, which Freeborn argues relates to services performed during the chapter 13 case, pursuant to 11 U.S.C. § 330(a)(4)(B). Other than its Fee Application, Freeborn has not filed an appearance or pleadings in this bankruptcy case. Freeborn states that all pre-petition fees and expenses were paid from a "third-party source". Freeborn also requested that the fees and expenses be allowed as a secured administrative expense pursuant to 11 U.S.C. § 503(b)(2), or alternatively pursuant to 11 U.S.C. § 503(b)(1)(A).

On December 2, 2014, the Condo Association filed its Objection to the Fee Application. On May 1, 2015, the Trustee filed her Objection to Freeborn's Fee Application. Both the Condo Association and the Trustee oppose the Fee Application because Freeborn did not seek required prior court approval for its retention as a professional in this case and provided no benefit to the estate. In addition, the Condo Association argues that Freeborn was not "disinterested" due to its dual representation of the Debtor and the Condo Association; that the Condo Association was the true client as all billings were sent to and paid by it; that the Judgment is not property of the estate; and the invoices submitted by Freeborn do not meet the standard for approval.[8] On May 11, 2015, Freeborn filed a Reply in Support of its Fee Application.

### III.   Applicable Standards

#### A.   Requirements for Approval of Professional Services

Section 327 of the Bankruptcy Code provides in relevant part as follows:

> (a) . . . the trustee, ***with the court's approval***, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
> 
> \* \* \*

---

[8] These additional objections by the Condo Association need not be considered by the Court, as this matter will be decided on the issues common to the objections of the Trustee and the Condo Association.

(e) The trustee, *with the court's approval*, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(a) and (e) [emphasis added].

Section 330(a)(1) of the Bankruptcy Code provides in relevant part:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, . . . the court may award to . . . a professional person *employed under section 327 or 1103* –

(A) reasonable compensation for actual, necessary services rendered by the . . . professional person, or attorney and by any paraprofessional person employed by an such person; and

(B) reimbursement for actual, necessary expenses.

\* \* \*

(4)(B) In a *chapter 12 or chapter 13* case in which the debtor is an individual, the court may allow reasonable *compensation* to the debtor's attorney for representing the interests of the debtor *in connection with the bankruptcy case* based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(1) and (a)(4)(B) [emphasis added].

Section 330 of the Bankruptcy Code provides the statutory authority for compensating the services and reimbursing the actual and necessary expenses of trustees, professional persons and others employed under section 327. It is "the exclusive means by which a claim for professional fees relating to a bankruptcy case is allowed." *In re Del Monico*, 2006 WL 1027225, at *2 (Bankr. N.D. Il. April 19, 2006) (citations omitted). If counsel expects to be paid from the estate, compensation must be sought and received under section 330(a). There is no alternative. *Id.* The applicant bears the burden of proof in a fee application case; the burden is to show entitlement to or reasonableness of professional fees. *See In re Nelson*, 424 B.R. 361, 367 (Bankr. N.D. Ill. 2009); *In re Minich*, 386 B.R. 723, 727 (Bankr. C.D. Ill 2008).

The purpose of § 327 is to allow the bankruptcy court to control administrative expenses. *In re Madison Mgmt. Group, Inc.*, 137 B.R. 275, 283 (Bankr. N.D. Ill.1992). In order to be paid from the estate, a professional must have been employed with court approval. *In re Weinschneider*, 395 F.3d 401, 403–04 (7th Cir.2005) (citing *Lamie v. United States Trustee*, 540 U.S. 526, 538–39 (2004)). Absent such approval, there is no right to compensation. *Madison Mgmt. Group*, 137 B.R. at 284 (citing *In re Banhalmi*, 84 B.R. 123, 125 (Bankr. N.D. Ill. 1988)).

Federal Rule of Bankruptcy Procedure 2014 sets forth the procedures for application for employment under § 327. The application must state, among other things: the specific facts showing the necessity of the employment; the reasons for the selection of the proposed professional; the professional services to be rendered; and, to the best of the applicant's knowledge, all of the proposed professional's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee or any persons employed in the office of the United States trustee. Fed. R. Bankr. P. 2014. The disclosures must be complete and "explicit enough for the court and other parties to gauge whether the person to be employed is not disinterested or holds an adverse interest." *In re Midway Indus. Contractors, Inc.*, 272 B.R. 651, 662 (Bankr. N.D. Ill. 2001).

### B. Allowance of Administrative Expenses

Section 503(a) and (b) of the Bankruptcy Code provides in relevant part:

> (a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.
>
> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
>> (1)(A) the actual, necessary costs and expenses of preserving the estate . . .
>>
>> (2) compensation and reimbursement ***awarded under section 330(a)*** of this title.

11 U.S.C. § 503(a) and (b) [emphasis added].

Administrative expenses are those incurred by the bankruptcy estate after filing of the petition.

Administrative priority claims are to be strictly construed because of the presumption that the debtor has limited resources to equally distribute among creditors. *In re Nat'l Steel Corp.*, 316 B.R. 287, 299 (Bankr. N.D. Ill. 2004); *In re KMart Corp.*, 293 B.R. 905, 909 (Bankr. N.D. Ill. 2003). The burden of proving entitlement to an administrative expense is on the claimant and the standard of proof is a preponderance of the evidence. *Nat'l Steel*, 316 B.R. at 300. In general, a claim will be afforded priority under § 503(b)(1)(A) if "the debt both (1) 'arise[s] from a transaction with the debtor-in-possession' and (2) is 'beneficial to the debtor-in-possession in the operation of the business.' " *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 773 (7th Cir.2004) (quoting *In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir.1984)).

Section 503(b)(2) permits administrative priority for "compensation and reimbursement awarded under section 330(a)" to professionals whose retention has been approved by the bankruptcy court under § 327. 11 U.S.C. § 503(b)(2). According to the Seventh Circuit:

> By making express provision for employment under § 327, payment under § 330, and priority under § 503(b)(2), the Code logically forecloses the possibility of treating § 503(b)(1)(A) as authority to pay (and give priority to) claims that do not meet its substantive requirements. Statutes directly addressing a subject prevail over silences and implications of other provisions. We so held, for §§ 327, 330, and 503 in particular, in *In re Singson*, 41 F.3d 316, 320 (7th Cir.1994) . . . .

*In re Milwaukee Engraving Co.*, 219 F.3d 635, 636 (7th Cir. 2000).

The majority of appellate decisions on the relation between §§ 327, 330, and 503(b) have found that a professional may not avoid the requirements of §§ 327 and 330 by seeking administrative expense allowance for fees under § 503(b)(1)(A). *Id.* at 639. *See Cushman & Wakefield, Inc. v. Keren Ltd. P'ship (In re Keren Ltd. P'ship)*, 189 F.3d 86, 88 (2d Cir.1999) (denial of motion to be retained nunc pro tunc as a professional or to classify its brokerage commission as a post-petition administrative expense affirmed); *F/S Airlease II, Inc. v. Simon*

*(In re F/S Airlease II, Inc.)*, 844 F.2d 99, 108–09 (3d Cir. 1988) (bankruptcy court's grant of airplane leasing broker's motion to be retained nunc pro tunc and classification of brokerage commission as a post-petition administrative expense reversed); *In re Albrecht*, 245 B.R. 666, 670–71 (10th Cir. BAP 2000), *aff'd*, 233 F.3d 1258 (10th Cir. 2000) (denial of fees to law firm for services performed after denial of appointment as general counsel to the trustee affirmed). If professionals "were able to be compensated under section 503(b)(1)(A), it would render section 327(a) nugatory and would contravene Congress' intent in providing for prior approval [for the retention of professionals]." *F/S Airlease*, 844 F.2d at 109. "One might as well erase § 503(b)(2) from the statute if [professionals] may stake their claims under § 503(b)(1)(A) even when ineligible under §§ 327, 330, and 503(b)(2)." *Milwaukee Engraving*, 219 F.3d at 637.

A professional without approval of employment under § 327(a) cannot seek compensation under § 503(b)(1)(A). Therefore, "[a]ny professional not obtaining approval is simply considered a volunteer if it seeks payment from the estate." *Albrecht*, 245 B.R. at 671 (internal quotation omitted). Claims under § 503(b)(1)(A) should not be used as an end-run around § 327's retention requirements.

### IV. Discussion

#### A. No Entitlement to Administrative Expense Claim Under § 503(b)(2)

As of the date of the Fee Application, Freeborn seeks $196,691.65 in unpaid compensation and expense reimbursement related to services performed during the chapter 13 case. Freeborn states that the $339,010 "Judgment consists of services rendered by Freeborn both prior to the Petition Date and during the chapter 13 case," but acknowledges that "all pre-petition fees and expenses were paid from a third-party source," presumably the Condo Association.[9]

---

[9] However, Freeborn has included in Exhibit 1 to its Fee Application billing statements for December 2007 for services rendered prior to the Debtor's March 18, 2013 bankruptcy filing. Otherwise, the billing statements submitted by Freeborn with its Fee Application span May 2008 to September 2011 ( prior to the date of the conversion of the Debtor's case). The Court also notes that Freeborn billed the Condo Association for most, if not all, of the fees sought in its Fee Application. Furthermore, a review of the Client Ledger provided by the Condo Association in Exhibit 1 to its Objection, reflects that at least five of the billing statements submitted, totaling

Freeborn argues that it is entitled to an administrative expense claim pursuant to section 503(b)(2) for compensation and reimbursement it seeks to be awarded under section 330(a). The provision under which Freeborn seeks compensation is § 330(a)(4)(B) of the Code. Referencing the Trustee's Individual Estate Property Record and Report filed on July 24, 2014, which shows that the only asset in the estate is the Judgment, Freeborn argues that its "efforts undoubtedly provided a substantial benefit to the estate," as "[i]t is thus clear that there would be no asset in the estate without the substantial efforts of Freeborn". But "[c]ourt approval under § 330(a) is what creates the liability [of the estate for compensation], not the performance of the services." *In re Jeanes*, 2004 WL 1718093, at *2 (Bankr. N.D. Iowa June 17, 2004).

Freeborn does not seek compensation for services performed post-conversion. Instead, Freeborn seeks compensation for services provided to the Debtor during his chapter 13 case. The Court may not allow compensation for services that either were not reasonably likely to benefit the debtor's estate, or were not necessary to the administration of the case. 11 U.S.C. § 330(a)(4)(A). One exception to this limitation is that in a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation from the bankruptcy estate to the debtor's attorney "for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in [§ 330(a)(3)]". 11 U.S.C. § 330(a)(4)(B); *see also In re Met-L-Wood Corp.*, 103 B.R. 972, 975 (Bankr. N.D. Ill. 1989). The quoted language is an explicit exception to the general prohibition in § 330(a)(4)(A) on compensation from the estate for services that were not "reasonably likely to benefit the debtor's estate" or were not "necessary to the administration of the estate". Thus, Congress plainly intended that counsel for a chapter 13 debtor could be compensated from the bankruptcy estate for services that provided a benefit to the debtor even though those services conferred no direct benefit upon the bankruptcy estate. *In re Brooks*, 2010 WL 2044933, at *4 (Bankr. C.D. Ill. May 24, 2010); *In re Lee*, 209 B.R. 708, 710 (Bankr. N.D. Ill. 1997). It also allows the court to consider the six

---

$99,626.29, were paid in full by someone. Which begs the question why Freeborn submitted its Fee Application if the Condo Association had a contractual liability to indemnify Walsh.

factors enumerated in § 330(a)(3). Such fees are allowable as an administrative expense entitled to priority distribution under 11 U.S.C. § 507.

The Trustee argues that Freeborn did not represent the interests of the Debtor in connection with his chapter 13 bankruptcy case and, thus, § 330(a)(4)(B) does not apply. Freeborn has provided no arguments or case law in support of its position that its services, initiated pre-petition and continued outside of the bankruptcy case, were related to or "in connection with the [Debtor's] bankruptcy case". Likewise, the Trustee has failed to cite to any cases on point. Nevertheless, the Court agrees with the Trustee's position.

"The Code is generous in the criteria for allowing fees to attorneys for Chapter 13 debtors (as opposed to attorneys for Chapter 7 debtors) for representation of the debtor. For example, services related to plan construction, abatements, financial counseling, decisions regarding what property the Chapter 13 debtor should retain, prosecution of the Debtor's rights to exempt property, or conversion are allowable because they are legitimate services to protect the interests of the debtor." *In re Amos*, No. 98 B 32761, 2000 WL 33672947, at *3 (Bankr. D. Utah Feb. 16, 2000). Compensation has been awarded to a debtor's attorney(s) in a chapter 13 case for representing a debtor in an adversary trial, e.g., *In re Blackburn*, 415 B.R. 668, 691 (Bankr. N.D. Ill. 2009), *vacated in part on reconsideration on other grounds*, September 8, 2009; and for bankruptcy audit-related legal services, e.g., *In re Moreland*, 2007 WL 1830837, at *4 (Bankr. C.D. Ill. June 22, 2007).

But Freeborn did not represent the Debtor or make an appearance in the Debtor's chapter 13 case or any related matter. Freeborn did not file a fee agreement or the Disclosure of Compensation required under Bankruptcy Code section 329 and Federal Rule of Bankruptcy Procedure 2016(b). Freeborn did not file a proof of claim for fees due and owing from the Debtor. Freeborn admits that it did not even know that Walsh had filed for bankruptcy until Wright filed its Motion to Vacate in state court, i.e., sometime in October 2012, ten months after the Debtor converted his case to chapter 7. Indeed, Freeborn's first appearance in this case was its Fee Application filed in November, 2014, four months after the Illinois Appellate Court found that the claim against Wright for attorney's fees belonged to the Trustee. Furthermore, the

Debtor did not schedule the Litigation and did not amend his Schedules to disclose his claim for attorney's fees filed with the state trial court less than a month after filing for bankruptcy.

Freeborn has failed to provide evidence that it represented the Debtor's interests in connection with his chapter 13 case. Therefore, Freeborn has failed to meet it burden that it is entitled to fees and expenses under section 330(a)(4)(B).

### B. No Entitlement to Administrative Claim Pursuant to § 503(b)(1)(A)

Alternatively, citing *In re Rikard*, 2011 WL 10637595, at *2 (Bankr. E.D. Cal. Nov. 17, 2011), Freeborn argues that its fees and expenses are allowable as necessary and reasonable costs and expenses of preserving the estate under section 503(b)(1)(A). However, in *Rikard*, the court was asked to decide whether a chapter 13 debtor's attorney may be paid for post-confirmation fees and costs, which exceeded the amount originally estimated to be paid as an administrative expense through the confirmed chapter 13 plan, without first confirming a modified plan. The debtors' attorney modified numerous plans to address objections and notices of default filed by the trustee. In that case, the debtors, the chapter 13 trustee and creditors did not object to the requested fees. The court found that the attorney "provided legal services which go beyond the level of service generally associated with the no-look fees allowed in chapter 13 cases without a detailed application," and the additional fees appeared "to be necessary and reasonable based on the amount of work required to keep this case afloat". *Id.*

Freeborn's reliance on *Rikard* is misplaced; it does not support its position. There debtors' attorney sought additional fees to be paid through a confirmed chapter 13 plan; counsel represented the debtors in a chapter 13 case; and there was no conversion to a chapter 7 case. In the case at hand, Freeborn did not represent the Debtor in his chapter 13 case; Freeborn's representation was not necessary to preserve the Debtor's chapter 13 estate, as the chapter 13 plan was confirmed less than two months after the petition date.

The Court agrees with the Trustee's argument that despite, not because of, Freeborn's efforts, the Judgment was deemed the property of the bankruptcy estate. Instead of representing the estate's interests, Freeborn repeatedly argued to the state court that the Judgment was not

property of the estate. As the Trustee points out, even after Freeborn had notice of the Debtor's bankruptcy case, rather than notify the Trustee of the Litigation, Freeborn chose to continue with the state court appeal. In fact, Freeborn never informed the Trustee of the Litigation; Wright did. Upon her appointment as Chapter 7 Trustee, Ms. Steege became responsible for administering all property of the bankruptcy estate.

Because Freeborn received neither pre-approval nor retroactive approval, § 503(b)(1)(A) does not apply. It is well-established that § 503(b)(1)(A) may not be used to pay or give priority to professional services requiring approval under § 327 in the absence of court approval. *Milwaukee Engraving*, 219 F.3d at 639. Therefore, Freeborn is precluded from avoiding the requirements of §§ 327 and 330 by seeking an administrative expense allowance under § 503(b)(1)(A). *See Id.*

### IV.   Conclusion

A decision awarding fees gives counsel an administrative expense claim for those fees, true enough. *See* 11 U.S.C. § 503(b)(2); *Specker Motor Sales Co. v. Eisen*, 393 F.3d 659, 664 (6th Cir. 2004). But a decision disallowing fees is not merely a decision about the priority of counsel's fee claim. The disallowance, in other words, does not simply leave disappointed counsel with a claim of some other, lesser kind; it leaves counsel with no claim. *Del Monico*, 2006 WL 1027225, at *3 (citations omitted). Given that, the Illinois Appellate Court found that every trial court order and filing entered in the Litigation after the Petition Date, including the notice of appeal, was void, it is not clear that the Judgment is even an asset of the estate; in which case, Freeborn has not provided any benefit to the estate. But that is not before the Court; Freeborn's administrative expense claim is the immediate matter at hand.

For the foregoing reasons, the Motion of Freeborn & Peters LLP for Award of Compensation and Reimbursement of Expenses and Allowance of Administrative Expense is denied, and the claim for an administrative expense is disallowed. The objections of the Chapter 7 Trustee and Sixty Thirty Condominium Association are sustained.

This Amended Memorandum Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order will be entered in accordance with this Amended Memorandum Opinion pursuant to Federal Rule of Bankruptcy Procedure 9021.

The September 11, 2015 Order entered at Docket Number 83 is vacated.

**DATED: September 24, 2015**             **ENTER:**

*/s/ Jacqueline P. Cox*
**Jacqueline P. Cox**
**U.S. Bankruptcy Judge**